1   **BURSOR & FISHER, P.A.**
    Yeremey O. Krivoshey (State Bar No. 295032)
2   Brittany S. Scott (State Bar No. 327132)
    1990 North California Blvd., Suite 940
3   Walnut Creek, CA 94596
    Telephone: (925) 300-4455
4   Facsimile: (925) 407-2700
    E-mail: ykrivoshey@bursor.com
5            bscott@bursor.com
6
7   **DOVEL & LUNER, LLP**
    Jonas Jacobson (State Bar No. 269912)
8   Simon Franzini (State Bar No. 287631)
    201 Santa Monica Blvd., Suite 600
9   Santa Monica, CA 90401
    Telephone: (310) 656-7066
10  E-mail: jonas@dovel.com
            simon@dovel.com
11
12  *Attorneys for Plaintiff*

13

14                  **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16

17  VISHAL SHAH, individually and on        Case No.    8:22-cv-2006
    behalf of all others similarly situated,
18                                          **CLASS ACTION COMPLAINT**
19                              Plaintiff,   **JURY TRIAL DEMANDED**
20          v.
21  PERRIGO COMPANY,
                                Defendant.
22

23

24

25

26

27

28

_____
CLASS ACTION COMPLAINT

Plaintiff Vishal Shah brings this action on behalf of himself and all others similarly situated against Defendant Perrigo Company.

## INTRODUCTION

1.    Defendant makes, sells, and markets "GoodSense" over-the-counter cough, cold and flu medicine (the "Non-Drowsy GoodSense Products" or "Products"), including generic GoodSense versions of brands like DayQuil and Robitussin. [1]  Like the branded versions, these medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM"), an ingredient that causes drowsiness.

2.    Defendant's Non-Drowsy GoodSense Products state prominently on the front of their label that they are "Non-Drowsy" and "Daytime" products (juxtaposed against Defendant's "Nighttime" versions).  By prominently labeling these products as "Non-Drowsy" and "Daytime," Defendant led Plaintiffs and other reasonable consumers to believe that the Non-Drowsy GoodSense Products do not cause drowsiness, and that drowsiness is not a side effect of those products.  Defendant also led Plaintiff and other reasonable consumers to believe that those products are for use during the day, and can be safely and satisfactorily consumed during waking hours, at work, and while driving and operating machinery.

3.    But the truth is that products containing DXM—and thus the Non-Drowsy GoodSense Products—do cause drowsiness, and that drowsiness is a known side effect of DXM (a fact not known by the average consumer).  In reality, the Products cause drowsiness, which in effect destroys the primary reason for purchasing the "Daytime" Products in the first place – for use during the day, when consumers do *not* want to be drowsy.

4.    In this way, Defendant misled Plaintiff and other consumers about the effects of the Non-Drowsy GoodSense Products.  This was a material misrepresentation that Plaintiff—and other reasonable consumers—relied on when

---

[1] The Non-Drowsy GoodSense Products include all GoodSense products sold by Defendant that are labeled "Non-Drowsy" and that contain Dextromethorphan Hydrobromide.

deciding to buy the products. Had Defendant been truthful, Plaintiff and other consumers would not have purchased the products or would have paid less for them.

5.    Plaintiff brings this case for himself and for millions of other consumers who purchased Non-Drowsy GoodSense Products.

## PARTIES

6.    Plaintiff Vishal Shah is a citizen of California (domiciled in Buena Park).

7.    The proposed class (identified below) includes citizens of every state within the United States.

8.    Defendant Perrigo Company is a corporation organized and existing under the laws of the state of Michigan, with its principal place of business in Michigan. Defendant has been doing business in the State of California at all relevant times. Defendant manufactures, sells, and/or distributes GoodSense-brand products and is responsible for the advertising, marketing, trade dress, and packaging of the Non-Drowsy GoodSense Products. Defendant manufactured, marketed, and sold the Non-Drowsy GoodSense Products during the class period.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

10.    The Court has personal jurisdiction over Defendant because Defendant sold Non-Drowsy GoodSense products to consumers in California, including Plaintiff.

11.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling the Non- Drowsy GoodSense Products to Plaintiff.

1

## **FACTUAL BACKGROUND**

2

**A.    Defendant makes, markets, and sells GoodSense products prominently labeled "Non-Drowsy."**

3

4

12.    Defendant manufactures, distributes, markets, and sells the Non-Drowsy

5

GoodSense Products.

6

13.    The front label of each Non-Drowsy GoodSense Product prominently

7

states that the product is "Non-Drowsy." For example:

8

9

10

11

12



13

14

15

16

17

18

**GoodSense Daytime Cold & Flu Multi-Symptom Relief Liquid** [2]

19

20

21

22

23

24

25

26

27

---

28

[2] http://goodsense.com/products/goodsense-daytime-cold-and-flu-multi-symptom-relief-liquid

CLASS ACTION COMPLAINT                                                                                    3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



**GoodSense Tussin DM Cough & Chest Congestion[3]**

18    14.    Further, the Products are sold as a "Daytime" products that are meant to

19    be consumed during the day, and offered for sale as an alternative to Defendant's

20    Nighttime Cold & Flu Relief Products (which have no "Non-Drowsy" claim), such

21    as the one pictured below:

22
23
24
25
26
27

---

28    [3] http://goodsense.com/products/goodsense-tussin-dm-cough-and-chest-congestion-liquid

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    15.    In reality, however, the "Daytime" and "Non-Drowsy" versions cause

20  drowsiness and drowsiness is a known side of effect of the products.  Accordingly, if

21  a reasonable consumer knew the truth, it would eviscerate the reason that consumers

22  buy "Daytime" or "Non-Drowsy" cold and flu relief products in the first place: to

23  avoid drowsiness when they need to be alert.

24    16.    These representations are materially the same across all Non-Drowsy

25  GoodSense Products.

26    17.    Based on the prominent "Non-Drowsy" and "Daytime" label included

27  on the face of each product, a reasonable consumer would believe that the products

28

CLASS ACTION COMPLAINT                                                                    5

do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is *not* a side effect of the product.

18.    Indeed, Defendant labeled the products this way because it intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.    The Non-Drowsy GoodSense Products cause drowsiness.**

19.    The Non-Drowsy GoodSense Products all contain 20 mg of DXM per dose.

20.    In truth, products containing DXM—like each of the Non-Drowsy GoodSense Products—do cause drowsiness.  Drowsiness is a documented side effect of DXM at the recommended dosages.  Authorities such as the National Library of Medicine [4] list drowsiness as a side effect of DXM.

21.    In fact, drowsiness is a common side effect at the recommended dosages.  According to a 2017 GlaxoSmithKline presentation on drug labeling, a "common" adverse reaction (i.e., side effect) is one that occurs in 3% or more drug takers and a "very common" side effect occurs in 10% or more drug takers.  Similarly, Pfizer's safety data sheet for DXM drugs states that "drowsiness" is a "common" adverse reaction associated with "clinical use." [5]  For example, one study of DXM found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine.[6]  The "cases of intense somnolence" were

---

[4] Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed November 22, 2021).

[5] https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/SDS_9PFIZ_ROBITUSSIN_DM_SYRP_4OZ.pdf

[6] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997). The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence (last accessed November 22, 2021).

CLASS ACTION COMPLAINT                                                          6

"related only to dextromethorphan" and not to the other drug studied. And the patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in Non-Drowsy GoodSense products. [7]

22. Furthermore, the FDA's adverse event report database confirms that sedation (i.e., drowsiness) is one of the most frequently-cited side effects of dextromethorphan-containing products. [8]

23. For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting DXM. [9] Indeed, drugs like DayQuil (which Defendant copies) are "antihistamine free," yet are still banned by the FAA because they have DXM and DXM causes drowsiness: [10]

| | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives** after the last dose (see above). |
|---|---|---|---|---|
| **Cough** | | | | |

---

[7] For example, GoodSense Daytime Cold & Flu Multi-Symptom Relief Liquid contains 10 mg of DXM per 15 ml of syrup and the recommended dosage is 30 ml orally every 4 hours. http://goodsense.com/products/goodsense-daytime-cold-and-flu-multi-symptom-relief-liquid. Simlarly, GoodSense Tussin DM contains 20mg of DXM per 10 ml of syrup and the recommended dosage is 10 mL orally every 4 hours. http://goodsense.com/products/goodsense-tussin-dm-cough-and-chest-congestion-liquid

[8] Sedation is associated with drowsiness. See IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")

[9] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

[10] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

---

CLASS ACTION COMPLAINT                                                                                    7

**C.    Defendant's Non-Drowsy representations misled reasonable consumers.**

24.    The Food and Drug Administration prohibits drug labeling that is "false or misleading." 21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

25.    This case is about Defendant's affirmative, "Non-Drowsy" and "Daytime representation on the Product labels.  No FDA regulation allows antitussives containing DXM to be labeled "Non-Drowsy" and "Daytime" and the FDA has never considered whether this claim is false and misleading (nor would the FDA ever approve such a claim, because it is in fact false and misleading).

26.    Plaintiffs are not seeking to require Defendant to add any additional warning or disclosure to the label. Instead, Plaintiffs seek to require Defendant to remove the misleading "Non-Drowsy" statement, that Defendant has voluntarily added to sell more products.

27.    Based on the fact that Defendant labels the Non-Drowsy GoodSense Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products (much less a common side effect). Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy." [11]  This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness."[12]

28.    Unlike Defendant, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex

---

[11] "How to read over the counter (OTC) drug labels," Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm
[12] https://www.merriam-webster.com/medical/nondrowsy

DM is non-drowsy, because this is not the truth:



29.    Defendant could have simply omitted the false and misleading statements, "Non-Drowsy" and "Daytime" from its products.

30.    Or, if Defendant wanted to say something to indicate that a Non-Drowsy GoodSense Product might cause *less* drowsiness than another GoodSense product, it could have made a truthful statement to this effect, as other drug makers do.

31.    For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":



32.    Because Defendant makes and sells the Non-Drowsy GoodSense Products, Defendant researched the known and common side effects of DXM. This is diligence that large companies like Defendant would do when selling a drug. As a result, Defendant knew that DXM causes drowsiness. Furthermore, Defendant controls its labeling, knowingly put on the "Non-Drowsy" and "Daytime" representations, and know the plain meaning of "Non-Drowsy." Finally, it is standard practice in the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading. For these reasons, Defendant knew that its labeling was false and misleading, or were reckless or willfully blind to this fact. And as alleged above, Defendant intended that consumers would rely on the "Non-Drowsy" and "Daytime" labeling, so that consumers would purchase more products, pay a price premium, and buy them as alternatives to its "Nighttime" products.

33.    Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer. In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy. For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake). As a second example, if a consumer is planning to engage in activities that require them to be alert, or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does. Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous. For example, taking a drug that causes drowsiness while driving, or flying a plane, is dangerous.

34.    Defendant's false statements increased the demand for Non-Drowsy GoodSense Products and allowed Defendant to charge a price premium. As explained above, consumers specifically value the "Non-Drowsy" and "Daytime" claim because consumers demand cough medicine that will not make them drowsy

---

(e.g., during the day, at work or while driving) and that they can take during the day. As a result, Defendant was able to charge more for these products than it would have been able to had the labeling been truthful. Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for these products. As purchasers, Plaintiffs and each class member paid this price premium and sustained economic injury.

35.    For example, on Amazon.com, a bottle of "Non-Drowsy" DayTime Cold & Flu sold through the GoodSense store is currently priced at $7.31 (for 8 ounces). This price is artificially inflated by the misleading "Non-Drowsy" and "DayTime" claims. If these misleading claims were removed, demand would drop, which in turn would reduce the market price. This price premium can be quantified (i.e., a dollar figure measured) using expert economic analysis of data that includes, among other things, sales and pricing information uniquely within the possession of Defendant.

36.    In addition, because the Non-Drowsy GoodSense Products actually do cause drowsiness, Plaintiff and each class member did not get what they paid for: a cough medicine that does not cause drowsiness. Instead, they received something that is worth less: a cough medicine that does cause drowsiness. Plaintiff and each class member sustained an economic injury for this additional reason, i.e., they received something worth less than the price they paid for it.

37.    Moreover, the Non-Drowsy GoodSense Products are sold specifically for use in situations where it is not acceptable for consumers to become drowsy (e.g., while driving, working, or supervising children). As a result, the products that Plaintiff and each class member did receive in exchange for the price they paid— Non-Drowsy GoodSense Products that cause drowsiness—were not suitable for, and were thus worthless for, their intended purpose. So the economic injury Plaintiff and each class member sustained consists of the entire purchase price of the products, because what they received was worthless for its intended use.

**D.      Plaintiff was misled by Defendant's misrepresentations.**

38.     On June 30, 2022, Plaintiff Shah bought a bottle of GoodSense "Non-Drowsy" Daytime Severe Cold & Flu from Amazon.com.  The package said "Non-Drowsy" and "Daytime" prominently on the label, and he read and relied on those statements when purchasing the product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the GoodSense "Non-Drowsy" Daytime Severe Cold & Flu Relief on the same terms, or would not have purchased them at all, had he known these representations were not true.  However, Plaintiff did not receive the benefit of his bargain because his Non-Drowsy GoodSense Product was not, in fact, "Non-Drowsy" or a "Daytime" medication.  When Plaintiff took the recommended dose of the medication as directed by Defendant, he became unexpectedly drowsy.   Plaintiff was not on any other medication that would have caused drowsiness, and there was no other potential cause for this drowsiness, aside from the ingredients in the medication.  He would not have bought this product had he known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product.  The price Plaintiff paid for the GoodSense medication was inflated due to the misleading "Non-Drowsy" and "DayTime" labels, for the reasons explained above.  In fact, because the product caused drowsiness, it was worthless to him.

39.     To be sure, Plaintiff would purchase Non-Drowsy GoodSense Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff, however, faces an imminent threat of harm because he will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings the asserted claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy GoodSense Product in California during

---

CLASS ACTION COMPLAINT                                                                                   12

1    the applicable statute of limitations (the "**Class**").

2         41.    The following people are excluded from the Class: (1) any Judge or

3    Magistrate Judge presiding over this action and the members of their family; (2)

4    Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any

5    entity in which the Defendant or its parents have a controlling interest and its current

6    employees, officers and directors; (3) persons who properly execute and file a timely

7    request for exclusion from the Class; (4) persons whose claims in this matter have

8    been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel

9    and Defendant's counsel, and their experts and consultants; and (6)  the legal

10    representatives, successors, and assigns of any such excluded persons.

11    ### *Numerosity*

12         42.    The proposed classes contain members so numerous that separate

13    joinder of each member of the class is impractical.  There are millions of proposed

14    class members.

15    ### *Commonality*

16         43.    There are questions of law and fact common to the proposed classes.

17    Common questions of law and fact include, without limitation:

18        •    Whether the Non-Drowsy GoodSense Products cause drowsiness;

19        •    Whether Defendant's labelling of the Non-Drowsy GoodSense Products

20    as "non-drowsy" and "daytime" is deceptive and misleading;

21        •    Whether Defendant violated state consumer protection statutes;

22        •    Whether Defendant committed a breach of express warranty; and,

23        •    Damages needed to reasonably compensate Plaintiff and the proposed

24    class.

25    ### *Typicality*

26         44.    Plaintiff's claims are typical of the proposed class.  Like the proposed

27    class, Plaintiff purchased Non-Drowsy GoodSense Products.  Like the proposed

28

---

CLASS ACTION COMPLAINT                             13

class, Plaintiff would not have purchased the products, or would have paid less for them, had he known that they cause drowsiness.

### *Predominance and Superiority*

45.    The prosecution of separate actions by individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

46.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed classes.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core liability question is common: whether Defendant breached an express warranty by falsely marketing products that cause drowsiness as "Non-Drowsy."

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## CAUSES OF ACTION

### COUNT I: Breach of Express Warranty
**(on behalf of Plaintiff and the Class)**

48.    Plaintiff incorporates by reference each and every factual allegation set forth above.

49.    Plaintiff brings this cause of action on behalf of himself and the Class.

50.    Defendant, as the designer, manufacturer, marketer, distributor, and/or

---

CLASS ACTION COMPLAINT                                                                14

seller of the Non-Drowsy GoodSense Products, issued material, written warranties
by representing that the products were "Non-Drowsy" and were "Daytime" products.
These were an affirmation of fact about the products (i.e., a description of the
effects) and a promise relating to the goods.

51.    Defendant marketed the Non-Drowsy GoodSense Products to
consumers, and Defendant's warranty was the basis of the bargain and was relied-
upon by Plaintiff and Class members.

52.    The Non-Drowsy GoodSense Products do not conform to the above-
referenced representation because they cause drowsiness.  Thus, the warranty was
breached.

53.    Plaintiff and members of the Classes were injured as a direct and
proximate result of Defendant's breach because (a) they would not have purchased
Non-Drowsy GoodSense Products if they had known that the products cause
drowsiness, and/or (b) they overpaid for the products because the products are sold at
a price premium due to the warranty.

54.    Plaintiff provided Defendant with notice of this breach of warranty, by
mailing a notice letter to Defendant's headquarters on October 27, 2022.

**COUNT II: Violation of California's Unfair Competition Law (UCL)**
**(on behalf of Plaintiff and the Class)**

55.    Plaintiff incorporates by reference and re-alleges each and every factual
allegation set forth above as though fully set forth herein.

56.    Plaintiff brings this cause of action on behalf of himself and members of
the Class.

57.    Defendant has violated California's Unfair Competition Law (UCL) by
engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three
prongs of the UCL).

1

### The Unlawful Prong

2      58.    Defendant engaged in unlawful conduct by violating the CLRA and

3   FAL, as alleged below and incorporated here.  In addition, Defendant engaged in

4   unlawful conduct by violating the California Sherman Act, Cal. Health & Safety

5   Code § 110390, which prohibits drug labeling that is "false or misleading in any

6   particular."

### The Fraudulent Prong

7

8      59.    As alleged in detail above, Defendant's "Non-Drowsy" and "Daytime"

9   representations were false and misleading.  Defendant's misrepresentations were

10  likely to deceive, and did deceive, Plaintiff and reasonable consumers.

### The Unfair Prong

11

12     60.    Defendant violated established public policy by violating the CLRA and

13  FAL, as alleged below and incorporated here.  The unfairness of this practice is

14  tethered to a legislatively declared policy (that of the CLRA, FAL, and Sherman

15  Act).

16     61.    The harm to Plaintiff and the Class greatly outweighs the public utility

17  of Defendant's conduct.  There is no public utility to misrepresenting the side effects

18  of an over-the-counter medication.  This injury was not outweighed by any

19  countervailing benefits to consumers or competition.  Misleading medication labels

20  only injure healthy competition and harm consumers.

21     62.    Defendant's conduct, as alleged above, was immoral, unethical,

22  oppressive, unscrupulous, and substantially injurious to consumers.

23     63.    Plaintiff and the Class could not have reasonably avoided this injury.

24  As alleged above, Defendant's representations were deceiving to reasonable

25  consumers like Plaintiff.

26                         *       *       *

27     64.    For all prongs, Defendant's misrepresentations were intended to induce

28  reliance, and Plaintiff saw, read and reasonably relied on them when purchasing

---

CLASS ACTION COMPLAINT                                                    16

Non-Drowsy GoodSense Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

65. In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy GoodSense Products.

66. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

67. Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

68. Plaintiff seeks an injunction and equitable restitution (in the alternative to legal relief).

## COUNT III: Violation of California's False Advertising Law (FAL)
### (on behalf of Plaintiff and the Class)

69. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

70. Plaintiff brings this cause of action on behalf of himself and members of the Class.

71. As alleged more fully above, Defendant has falsely advertised Non-Drowsy GoodSense Products by falsely representing that the products do not cause drowsiness and that drowsiness is not a side-effect of the products.

72. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

73.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy GoodSense Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

74.     In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy GoodSense Products.

75.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members

76.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

77.     Plaintiff seeks an injunction and equitable restitution (in the alternative to legal relief).

## COUNT IV: Violation of California's Consumer Legal Remedies Act (CLRA)
### (on behalf of Plaintiff and the Class)

78.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

79.     Plaintiff brings this cause of action on behalf of himself and members of the Class.

80.     Plaintiff and the other members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

81.     Plaintiff, the other members of the Class, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

CLASS ACTION COMPLAINT                                                                    18

82.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

83.    As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other members of the Class that the Non-Drowsy GoodSense Products do not cause drowsiness, and that drowsiness is not a side effect of the products, when in fact, the products do cause drowsiness.

84.    As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

85.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

86.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy GoodSense Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

87.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy GoodSense Products.

88.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

89.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations; or (c) they received products that were worthless for their intended purpose.

---

CLASS ACTION COMPLAINT                                                          19

90.     Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the Class, seeks injunctive relief.

91.     CLRA § 1782 NOTICE.  On October 27, 2022, a CLRA demand letter was sent to Defendant's headquarters via certified mail (return receipt requested). This letter provided notice of Defendant's violation of the CLRA, for Plaintiff and the class, and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and the Class within 30 days, Plaintiff will amend to seek all available monetary relief.

**COUNT V: Negligent Misrepresentation**
**(on behalf of Plaintiff and the Class)**

92.     Plaintiff incorporates by reference the facts alleged above.

93.     Plaintiff alleges this claim individually and on behalf of the Class.

94.     As alleged in detail above, Defendant's labeling represented to Plaintiff and Class members that the Non-Drowsy GoodSense Products do not cause drowsiness and that drowsiness is not a side effect of these products.

95.     These representations were false. As alleged above, the Non-Drowsy GoodSense Products do cause drowsiness and drowsiness is a documented side effect.

96.     When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

97.     Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

98.     In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy GoodSense Products.

---

CLASS ACTION COMPLAINT                                                        20

99.   Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

100.   Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendant's false misrepresentations; or (c) they received products that were worthless for their intended purpose.

## COUNT VI: Quasi-Contract / Unjust Enrichment
### (on behalf of Plaintiff and the Class)

101.   Plaintiff incorporates by reference the facts alleged above.

102.   Plaintiff brings this claim in the alternative to his legal claims.

103.   As alleged in detail above, Defendant's false and misleading labeling caused Plaintiff and the Class to purchase Non-Drowsy GoodSense Products and to pay a price premium for these products.

104.   In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

105.   Plaintiff and the Class seek restitution.

## COUNT VII: Fraud
### (on behalf of Plaintiff and the Class)

106.   Plaintiff incorporates by reference the facts alleged above.

107.   Plaintiff alleges this claim individually and on behalf of the Class.

108.   As discussed above, Defendant misrepresented that GoodSense Products are non-drowsy.  The Non-Drowsy GoodSense Products do cause drowsiness and drowsiness is a documented side effect.

109.   The false and misleading representations were made with knowledge of their falsehood.

1  110.  The false and misleading representations were made by Defendant,

2  upon which Plaintiff and members of the Class reasonably and justifiably relied and

3  were intended to induce and actually induced Plaintiff and Class members to

4  purchase the GoodSense Products.

5  111.  The fraudulent actions of defendant caused damage to Plaintiff and

6  members of the Class, who are entitled to damages as a result.

**PRAYER FOR RELIEF**

8  WHEREFORE, Plaintiff, individually and on behalf of all others similarly

9  situated, seeks a judgment against Defendant as follows:

10  A.   An order certifying the asserted claims, or issues raised, as a class

11        action;

12  B.   A judgment in favor of Plaintiff and the proposed Class;

13  C.   Damages, including statutory, treble, and punitive damages where

14        applicable;

15  D.   Restitution;

16  E.   Disgorgement, and other just equitable relief;

17  F.   Pre- and post-judgment interest;

18  G.   An injunction prohibiting Defendant's deceptive conduct, as allowed

19        by law;

20  H.   Reasonable attorneys' fees and costs, as allowed by law; and

21  I.   Any additional relief that the Court deems reasonable and just.

**JURY DEMAND**

23  Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  November 1, 2022        Respectfully submitted,

**BURSOR & FISHER, P.A**.

By: ___*/s/ Yeremey O. Krivoshey*___

---

CLASS ACTION COMPLAINT                                                22

Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ykrivoshey@bursor.com
          bscott@bursor.com

**DOVEL & LUNER, LLP**
Jonas Jacobson (State Bar No. 269912)
Simon Franzini (State Bar No. 287631)
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066
E-mail: jonas@dovel.com
          simon@dovel.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Yeremey O. Krivoshey, declare as follows:

     1.    I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

     2.    The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California.

     I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Louisville, Kentucky this 1st day of November, 2022.

                           */s/ Yeremey O. Krivoshey*
                           Yeremey O. Krivoshey